GUENTHER v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant*.

1. **Practice in Supreme Court**: DEMURRER TO EVIDENCE. A defendant who offers evidence on his own behalf after his demurrer to the plaintiff's evidence has been overruled, thereby waives objection to the action of the trial court on said demurrer. The Supreme Court will in such case determine the case on the whole evidence.

2. **Negligence After Becoming Aware of Peril of Party Injured**: RAILROAD. In an action against a railroad for the death of plaintiff's husband by the negligence of the company's servants in striking him with its train, it appeared that the deceased was struck within the city of St. Louis at a place on its track which had for a long time been used by pedestrians, and especially by workmen in going to, and returning from, adjoining stone quarries; that the deceased, who was struck while going south by a train coming from the north, was in plain view for several hundred yards. *Held*, that the plaintiff was entitled to recover, although the deceased was guilty of contributory negligence in being on the track, if the train could have been stopped by the servants of defendant in charge of it, by the exercise of ordinary care and prudence, in time to prevent the injury, after they became aware, or might have become aware, by the exercise of ordinary care, of the peril of said deceased while on the track.

3. ———— : ————. It was the duty of the company's servants to be at their posts and to keep a lookout on the track to avert accidents.

Guenther v. St. Louis, I. M. & S. Ry. Co.

4. **Negligence, Action for, Against Railroad** : INSTRUCTION. The court instructed the jury that they should find for defendant because of the contributory negligence of the deceased in failing to take ordinary care to notice the train which struck him, unless they believed from the evidence that the place where the injury occurred was a public highway or road used as such for twenty years, and that the defendant had failed to ring the bell of its locomotive for eighty rods while passing over said road or street, and that the death of the deceased resulted directly from the omission to ring the bell. *Held*, error.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*Bennett Pike* for appellant.

(1) Plaintiff's testimony failed to make out a *prima-facie* case. Under the allegations of the petition the demurrer to the evidence should have been sustained. *Rine v. Railroad*, 88 Mo. 400 ; *Yarnall v. Railroad*, 75 Mo. 583 ; *Maher v. Railroad*, 64 Mo. 267 ; *Zimmerman v. Railroad*, 71 Mo. 477 ; *Railroad v. Brinson*, 10 Ga. 207 ; *Railroad v. Hall*, 72 Ill. 222. (2) The court committed error in the admission of testimony offered by plaintiff, in relation to the continued use of the tracks of defendant by pedestrians. *Railroad v. Brinson*, 10 Ga. 207 ; *Railroad v. Godfrey*, 71 Ill. 506 ; *Sweeney v. Railroad*, 10 Allen, 373 ; *Hickey v. Railroad*, 14 Allen, 429 ; *Railroad v. Hummell*, 44 Pa. St. 375 ; *Gillis v, Railroad*, 59 Pa. St. 129. (3) The court committed error in refusing to give the instructions asked by defendant. *Maher v. Railroad*, 64 Mo. 275 ; Shearm. & Redf. on Neg., sec. 478 ; *Bell v. Railroad*, 77 Mo. 61 ; *Zimmerman v. Railroad*, 71 Mo. 476 ; *Powell v. Railroad*, 76 Mo. 80 ; *Turner v. Railroad*, 75 Mo. 607 ; *Bell v. Railroad*, 72 Mo. 60. (4) The court committed error in giving instructions on its own motion. *Fitzgerald*

*v. Hayward*, 50 Mo. 516; *Goetz v. Railroad*, 50 Mo. 472; *Yarnall v. Railroad*, 75 Mo. 583; *Kelly v. Railroad*, 75 Mo. 139; *Wernse v. Railroad*, 81 Mo. 368; *Scoville v. Railroad*, 81 Mo. 431; *Welsh v. Railroad*, 81 Mo. 466; *Bergmann v. Railroad*, 88 Mo. 683.

*Leo Rassieur* and *Dexter Tiffany* for respondent.

(1) Plaintiff's testimony did not fail to make out a *prima-facie* case, and furthermore defendant did not stand upon its demurrer to the evidence, but put in its proof and strengthened plaintiff's case, and thereby waived its demurrer. *Goedger v. Finn*, 10 Mo. App. 226; *Cadmus v. Bridge*, 15 Mo. App. 86; *McCarty v. Railroad*, 15 Mo. App. 385; *Bolt & Iron Co. v. Buell*, 8 Mo. App. 594. (2) The court committed no error in the admission of testimony offered by plaintiff to show the continued use by the public of that portion of the dedicated highway on which defendant had placed its tracks. Acceptance by the public of a dedication makes it effectual. *Landis v. Hamilton*, 77 Mo. 554. (3) The court's instructions fairly submitted the case to the jury. *Klein v. Railroad*, 90 Mo. 314; *Bergman v. Railroad*, 88 Mo. 678; *Donahoe v. Railroad*, 83 Mo. 543; *Kelley v. Railroad*, 75 Mo. 138; *Frick v. Railroad*, 75 Mo. 598; *Scoville v. Railroad*, 81 Mo. 434; *Karl v. Railroad*, 55 Mo. 482. The instructions of the court are not open to the criticisms made, but even though instructions may be subject to criticism, still the case will not be reversed, where it is evident from the whole record that the judgment is for the right party. R. S., sec. 3775; *Tate v. Railroad*, 64 Mo. 149; *Nelson v. Foster*, 66 Mo. 381; *Noble v. Blount*, 77 Mo. 235; *Bradford v. Floyd*, 80 Mo. 207; *Melhudy v. Ross*, 81 Mo. 481; *Otto v. Bent*, 48 Mo. 23; *Hedecker v. Ganzhorn*, 50 Mo. 154; *Haskings v. Railroad*, 58 Mo. 302; *Prewitt v. Martin*, 59 Mo. 325; *Noffsinger v. Bailey*, 72 Mo. 216; *State v. Hopper*, 71 Mo. 425.

BRACE, J.—This is an action in which plaintiff seeks to recover damages for the alleged negligence of defendant in running its locomotive and cars over her husband, Jacob Guenther, and killing him. The answer of the defendant contained a general denial and a plea of contributory negligence; the reply of plaintiff to the answer was a general denial. At the close of plaintiff's evidence in chief, a demurrer to the evidence was interposed, which being overruled the defendant then introduced its evidence, and the case was submitted to the jury. Under the instructions of the court, a verdict was rendered for the plaintiff, and from the judgment entered thereon, the defendant, after an unsuccessful effort for a new trial, appeals, and assigns for error the refusal of the court to sustain the demurrer to the evidence, the admission of improper evidence for the plaintiff, the giving of improper instructions for the plaintiff, and refusing proper instructions for the defendant.

The defendant is not in a position to urge the overruling of the demurrer to the evidence, as reversible error, having waived the same by putting in its own evidence, and the case will have to be examined and determined upon the whole evidence in the case. *Bowen v. Railroad, ante,* p. 268.

It appears from the evidence that, about seven o'clock on the morning of the thirteenth of August, 1884, the deceased, while walking southwardly on the defendant's track, at a point within the limits of the city of St. Louis, about three miles south of the Union Depot, was struck by the Carondelet accommodation train, running south; that he was thrown from the track and died the same day; that the train was about on time, perhaps a few minutes late, and running at the rate of from fifteen to twenty miles an hour; that there is a plain and unobstructed view of the track for five hundred yards or more north of the point where the

collision took place. The evidence of the plaintiff tended to prove that on the train, while moving over this distance, no bell was rung, and no whistle sounded, till at the moment when Guenther was struck. The evidence of the defendant tended to show that the bell was being continually rung on the engine during the whole time the train was moving to the moment when deceased was struck. At the point of collision, the defendant has two tracks on its roadbed, the eastern track used by trains going north, the western track by trains going south; the deceased was struck on the western track. Between these two tracks there is a space of from five to eight feet; the roadbed is located along the western bank of the Mississippi river, and in the bluff west of the roadbed and adjacent to it a number of quarries have for a number of years been operated; between the roadbed and these quarries, a dirt road, on the average about four feet lower than the roadbed, has for a number of years been used by the quarry teams, and for a like period, the workmen in passing on foot to and from their work, as well as other pedestrians, used the roadbed, the walk there being level and better than the dirt road below; and about seven o'clock in the morning it was customary to find quite a number of people passing along the roadbed at this point.

Defendant's roadbed was constructed on a strip of land conveyed to it for a right of way in the year 1856, and originally sustained but one track. In 1859, the owners of the land over which the defendant's easement was granted laid off that part of the tract lying west of the roadbed into lots and blocks, divided by streets, and located on the plat a street forty feet wide running parallel with the west side of the railroad track, and filed and recorded a deed of dedication thereof to public uses; this street was afterwards recognized by the city on its plats, but was never improved or definitely located on the ground, so far as the evidence shows, nor was it

built upon as a street, or used as such except as herein-
before stated in connection with the dirt road mentioned,
and the defendant's roadbed.    This street thus laid off
was the terminus of the streets running east and west
on the plat, none of them crossing it.    About the year
1873, the defendant laid the second track on its roadbed,
and there was evidence tending to show that in doing so
the western track was pushed west of its original loca-
tion in some places along where the accident occurred to
make room for the eastern track, and it is contended for
the plaintiff that the collision took place within the
limits of this platted street, and by the defendant within
the limits of its right of way.

The evidence on this subject is very vague and
unsatisfactory, nor in the view we take of this case do
we think it very important to determine which is right.
The negligence, if any, of either plaintiff or defendant
is to be measured by the condition of things at the place
where the accident took place, as they were known to
exist by each of them at the time the acts of each are
complained of as being negligent, and those acts cannot
be affected, one way or the other, by the existence of a
fact which could be determined only by an accurate sur-
vey, and neither of the parties would have been a whit
more or less negligent, if, on such survey, the true line
of division between the roadbed and street should hap-
pen to fall on the one or the other side of the exact spot
where the deceased was struck ; or if it should turn out
that the street-way and roadway lapped, and that that
spot was both within the limits of the defendant's right of
way and also of the platted street.

It further appeared from the evidence that there
was no public crossing at or near the place where
Guenther was struck and no improved streets within two
or three blocks thereof.    The evidence of the plaintiff
failed to show the place at which the deceased entered
upon the track, but tended to show that he had been

walking between the rails on the western track, without looking back or paying any attention to the approach of trains from the north, for a distance of seventy-five or a hundred yards, and that he was thus walking when the train that struck him was approaching him at a distance of five hundred yards upon the road, and continued to do so until he was struck. The evidence of the defendant tended to show that the deceased was walking in the space between the east and west tracks until the engine approached within seventy to ninety feet of him, when he stepped on the west track and was almost immediately struck by the engine ; that as soon as he stepped on the track everything was done that could be done to stop the train, but it could not be stopped in time to prevent striking him ; that the train running at the rate of fifteen miles an hour could not be stopped in less than a hundred and eighty to a hundred and ninety feet.

In view of the first instruction given by the court, on its own motion, many of the objections urged to the action of the court in refusing instructions asked for in behalf of the defendant are obviated, as it is not perceived how, in the light of that instruction, the refusal of the court to give them could have operated to the prejudice of defendant's case. A consideration of instructions numbered one, two, three, and five, given by the court on its own motion, in connection with defendant's instruction numbered thirteen, will be sufficient for the disposition of the case. Those instructions are as follows :

"1. The court instructs you that the deceased, Jacob Guenther, was guilty of negligence in failing to take ordinary care to notice the train that struck him. Hence, your duty as jurors requires you to find a verdict for defendant, unless you find the other facts relating to this case to be as set forth in instructions two or three."

"2. If the jury believe, from the evidence, that, at the time of the accident, the place where the injury occurred to Jacob Guenther was a traveled public road or street, and had been used as a public road, highway, or thoroughfare for twenty years prior thereto, then the court declares the law to be that it was the duty of the servants of the defendant to keep ringing the bell of the locomotive while the train was passing over said road or street and for a distance of eighty rods before reaching the place of the accident, and if it appears from the evidence that no bell was rung while the locomotive was so passing over said street or road at the time of and immediately before the accident, then the jury may infer negligence or carelessness in the agents or employes of the defendant in the running and managing of said train, and if you further find, from the evidence, that the death of said Jacob Guenther was directly occasioned by, or directly resulted from, said omission to so sound the bell as aforesaid, then you should return a verdict for the plaintiff."

"3. If you find, from the evidence, that said train of defendant that struck deceased could have been stopped by the employes of the defendant in charge of said train, by the exercise of ordinary care on their part, in time to have prevented his injury, after they (said employes) became aware, or might have become aware (by the exercise of ordinary care), of his imminent peril of being struck by said train, then you should return a verdict for the plaintiff."

"5. If you find, in view of the other instructions, that the place where Guenther was killed was not a part of the public street, or that defendant was not guilty of any such negligence as is described in instruction numbered two (under the law as stated therein), and further find that the agents of defendant in charge of said train exercised ordinary care in the management of said train, and did all they reasonably could in the circumstances

to stop the train and avoid the injury to deceased, Guenther, then you should return a verdict for defendant."

Defendant's instruction refused :

"13. If the jury find, from the evidence, that the deceased, Jacob Guenther, stepped upon the western track of the defendant's railway just before the accident, in front of a passenger train approaching thereon from the north, and that he could have seen or heard said train if he had looked or listened, and that he went on said track without looking or listening for the same, and was struck by said train, then the verdict should be for the defendant; unless the jury further find, from the evidence, that said train could have been stopped by the employes of defendant in charge of said train by the exercise of ordinary care and prudence in time to prevent the injury, after they became aware, or might have become aware (by the exercise of ordinary care), of the peril of said deceased while on said track."

The evidence fails to show that the deceased was struck at or near the crossing of any traveled public road or street, or that any such public crossing was within such a distance as to require that the bell on the engine should have been kept ringing, under the statute, as it approached the place where deceased was struck, and while the failure to ring the bell when a train is passing longitudinally along a public street, except on approaching a public crossing, and within the distance of eighty rods thereof, is not, in the absence of any ordinance requiring it, negligence *per se*, yet it must be conceded, considering the long-continued and well-known situation of affairs on defendant's roadbed at the place where deceased was struck, whether that point is within the limits of the street proper or not, the exercise of reasonable care and caution required that the bell should be continually rung on the engine of a train approaching that place, at that hour, at a speed of from fifteen to twenty miles an hour. And the failure

of defendant's servants to so keep the bell ringing, if found to be a fact, would be an act of negligence which may have been a cause contributing directly to Guenther's death, for the injury to plaintiff resulting from which a recovery might be had, but for the further fact that the deceased, who the evidence shows was a man of mature years, in possession of all his faculties, and who, for some time, had been working in a quarry alongside the track, passing the point on the track where he was struck daily, at or about the time of day at which the accident occurred, going to his work, and who must have known that this train was due about that time, instead of walking between the two tracks, where the evidence shows there was ample space to walk with safety, even when trains were passing each other on these tracks, on a bright morning, in broad daylight, entered upon the track, the view of which was unobstructed for several hundred yards, and continued to walk on it, without looking or listening for an approaching train, or paying any attention whatever to his situation, was also guilty of such negligence contributing directly to his death as would prevent a recovery, and the verdict of the jury must have been for the defendant, unless it further appeared that, after the deceased had, by his negligence, exposed himself to peril, the defendant's servants became aware of his perilous situation, or, by the exercise of ordinary care, might have discovered it, in time to have avoided injuring him, and thereafter, immediately before, and up to the time of actual collision, failed to use the means within their power with a proper degree of care consistent with the safety of those on board the train, to avoid killing or injuring him (*Donahue v. Railroad*, 91 Mo. 357; *Donahoe v. Railroad*, 83 Mo. 543; *Bergman v. Railroad*, 88 Mo. 679; *Kelley v. Railroad*, 75 Mo. 138; *Harlan v. Railroad*, 65 Mo. 22); and what would be due care under such circumstances would

necessarily be a question for the jury under proper instructions.

The plaintiff had no case on the evidence, unless the facts brought it within this qualification of the general rule on contributory negligence, and the court properly so declared in the first instruction. And if the case had been submitted to the jury on this instruction in connection with the third, and the defendant's refused instruction, the real and only issue in the case might be said to have been in a manner submitted to the jury. And while in the first instruction the jury were told in effect that, although the deceased was guilty of such contributory negligence as would prevent a recovery, unless they found the facts to be as stated in the third instruction, they were also told, not only if they found the facts as stated in the third instruction to find for the plaintiff, but if they found them to be as stated in the second instruction to find for plaintiff. By the use of the disjunctive conjunction in the first instruction, it is made possible to read the first and second instructions together as one instruction, or the first and third together as one instruction, but it is impossible to so read and understand the first, second, and third together as one instruction. Reading the first and second together, the jury were in effect told that, although the deceased had been guilty of negligence contributing directly to his death, yet if they found from the evidence that no ₂ bell was rung while the locomotive was passing over the street or road immediately before the accident, and that the death of said Jacob Guenther directly resulted from the omission to sound the bell, they should find for the plaintiff.

In other words the jury were told, here are two acts of negligence, one of the plaintiff in being on the track, the other of defendant in not sounding the bell, concurring at the same time and place, the result of which is death; now, if you find that the death resulted

directly from the failure to ring the bell, you must find for the plaintiff, practically ignoring deceased's contributory negligence without which no death could have happened, by leaving the jury at liberty to select out the defendant's act of negligence, and say that was the direct cause of his death, and to render a verdict accordingly, and under it, the jury had only to find that the bell was not being rung immediately before and at the time Guenther was struck in a publicly traveled street in order to find a verdict for the plaintiff, notwithstanding Guenther's act of negligence contributed directly to his death. It is not necessary to quote authorities to show that this is not the law. The death of Guenther, resulting from the concurrent acts of negligence of defendant in failing to ring the bell, and of himself in being on the track, paying no heed to his situation or the approach of trains, nothing further appearing, the verdict must have been for the defendant. In order for plaintiff to recover, notwithstanding deceased's negligence, a state of facts must have been shown bringing the case within the principle which the court undertook to declare in the third instruction. This reading of the second instruction received a sort of negative emphasis from the fifth, in which the jury are in effect told, that if the servants of the defendant did ring the bell, and exercised ordinary care in the management of the train, and did all they reasonably could in the circumstances to stop the train and avoid the injury, then they should return a verdict for the defendant. In the light of instructions one, two, and five, the jury might well conclude that, in order to find for plaintiff, it was only necessary for them to find that the place where Guenther was struck was within the limits of the street, and that the bell was not being rung immediately before he was struck; but in order to find for the defendant, they must find that its servants had been guilty of no

act of negligence whatever.   This was not a fair presentation of the case to the jury, nor was the vice of the second instruction cured in any manner by the third. They each presented a separate and independent hypothesis of facts, upon either of which the jury were instructed to find a verdict for plaintiff regardless of the other.

   The evidence of the defendant tended to prove the facts hypothetically stated in defendant's refused instruction, and no good reason is perceived why it should not have been given.   There would seem to be no difficulty in presenting the issues of fact to be tried in this case properly to the jury.   The place where the accident occurred, and the defendant's roadbed along there, cannot, in the common acceptation of the terms, be called a public street, road, or highway, nor are there any public crossings, properly speaking, such as are contemplated in the statute requiring a bell to be rung on approaching them.   Nevertheless, for many years, a street has been dedicated to public use, running parallel with defendant's track, it may be and probably in some places is, within the limits of that street; however that may be, for years the space alongside the track between it and the bluff, has been used by quarry teams, and at places they have been in the habit of crossing the track to get to the river, whilst the roadbed for years has been made use of by pedestrians, and especially by the workmen in the adjacent quarries in going to, and returning from, their work. In the morning, about the time this train is passing the point of the accident, large numbers of them are to be found passing over this ground, to their work.   The track is straight, clear, and unobstructed, and a person on it is in plain view to an approaching train from the north for several hundred yards.   The servants of the defendant on this train, approaching this point, at this hour, at the rate of speed testified to, while such rate of

speed is not unlawful, and while it may not have been their duty absolutely under the law to keep the bell ringing, ought to have been at their posts, on the alert, watching the track before them, and if the deceased was seen to be walking on the track, apparently unconscious of their approach, to give the alarm by both bell and whistle, and if these were unheeded, to stop the train, if need be, in time, if possible, with safety to those on board, to prevent running over and killing him, and if his death by these means could have been avoided, and they were not used, the defendant is liable, although the deceased may have been guilty of negligence in entering and walking upon the defendant's track, which contributed to his death. And the defendant is alike liable if its servants did not, but, by the exercise of such caution and care as the exigencies of the situation demanded of an ordinarily prudent man, could have discovered the perilous situation of the deceased, and could have made use of the means that would have prevented the injury, after such discovery. The theory of the plaintiff, on the evidence, was, that the deceased was and could have been seen on the track by the defendant's engineer and fireman if they had been at their posts, on the watch, several hundred yards before the engine reached the place where he was struck; that they had plenty of time to give the alarm, observe its effect on the deceased, and if it failed to alarm him, afterwards to have stopped the train, before it reached him, and thus have prevented the tragedy, all of which they failed to do. The theory of the defendant was that the deceased stepped upon the track a short distance in front of the engine, was immediately discovered in his perilous situation, and every effort made to stop the train before it struck him, but that the train could not be stopped in time. This was the only issue on the evidence that

should have been presented to the jury, and to which, if sharply presented, they could have responded intelligently.

For the error in giving the second instruction, and in refusing defendant's instruction number thirteen, without discussing the other instructions, the judgment will be reversed and the cause remanded for new trial. All concur.