DLAUHI v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant*.

DIVISION TWO.

1. **Negligence**: RAILROAD: ACCIDENT AT CROSSING. Where a boy stopped on a railroad at a street crossing to await the passage of a train on another track and did not look or listen for a train on the track on which he stood, it is error to instruct the jury that, although he did not exercise care according to his age and discretion, the company is liable if the bell of the engine by which he was struck was not sounded for the crossing, and the failure to so sound the bell directly caused the injury.

2. ——: ——: ——: CONFLICTING INSTRUCTIONS. Said instruction is also in conflict with another which told the jury that if the train approached the place of accident at a low rate of speed, but without sounding the engine bell for the crossing, and plaintiff went on the track when the train was within fifteen or twenty feet of him, and defendant's agents in charge of the train after seeing plaintiff's danger did all they could to stop the train and prevent the accident, plaintiff could not recover.

Dlauhi v. The St. Louis, I. M. & S. Ry. Co.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*Bennett Pike* and *H. G. Herbel* for appellant.

(1) The court erred in admitting the evidence offered by plaintiff relative to the distance at which an engine bell could be heard from the Fillmore street crossing. *Marcott v. Railroad*, 49 Mich. 102 ; *Hurt v. Railroad*, 94 Mo. 260 ; *Brown v. Road Co.*, 89 Mo. 153 ; *Rosenheim v. Ins. Co.*, 33 Mo. 236 ; *Rose v. Bank*, 91 Mo. 403 ; *Weil v. Posten*, 77 Mo. 288. (2) The court erred in overruling defendant's demurrers to plaintiff's evidence and to the whole case. (3) The court erred in refusing to give the instructions asked by defendant. (4) The court erred in giving the instructions asked by plaintiff. *Guenther v. Railroad*, 95 Mo. 296 ; *Railroad v. Jordan*, 10 Am. & Eng. R. R. Cases, 304 ; *State v. De·Bar*, 58 Mo. 397 ; *State v. Clark*, 54 Mo. 34 ; *State v. Binder*, 38 Mo. 453 ; *City v. Alexander*, 23 Mo. 483 ; *Terry v. Railroad*, 89 Mo. 587 ; *Davis v. Railroad*, 89 Mo. 350 ; *Nichols v. Winfrey*, 79 Mo. 551. (5) The court erred in giving the instructions of its own motion. See authorities cited under fourth point, *supra*.

*A. R. Taylor* for respondent.

(1) The evidence of witnesses Englehardt and Vance Dlauhi, as to how far, under conditions as existed at the time of injury, they had heard bells on engines ring, was admissible as a fact and not opinion. (2) If the trial court had given instruction marked c for defendant, it would have been a ruling in conflict with an unbroken line of decisions of this court, among which may be mentioned *Merz v. Railroad*, 88 Mo. 672 ; *Keim v. Railroad*, 90 Mo. 321 ; *Kelley v. Railroad*, 95 Mo. 285-286 ; *Eswin v. Railroad*, 96 Mo. 295 ; *Schlereth*

*v. Railroad*, 96 Mo. 515. (3) Instruction, numbered 1, given for plaintiff was not erroneous. *Kelley v. Railroad*, 95 Mo. 294. (4) In all cases where there is a violation by a railroad of a duty imposed by law, and a person injured thereby, who would not have been injured but for the violation of law by the railroad, then, notwithstanding the injured person may have been wanting in care, he may recover, the court holding, properly, that the injured person's reliance upon the performance of a duty imposed by law on the railroad misled him to his injury. *Petty v. Railroad*, 88 Mo. 319; *Kelley v. Railroad*, 95 Mo. 286; *Eswin v. Railroad*, 96 Mo. 295. (5) By the terms of the statute the alternative of sounding whistle is not applicable to a city, and, therefore, the cases of *Terry v. Railroad*, 89 Mo. 587, and *Turner v. Railroad*, 78 Mo. 580, have no relevancy to this discussion. (6) The last serious contention by appellant is that plaintiff's and the court's instructions are erroneous, because it does not appear that appellant's train ran north for eighty rods, or for that matter eighty rods, before reaching Fillmore street crossing at the time in question. In other words, it is argued that a part of the journey up from Robert avenue station to Fillmore street crossing may not have been in the city, and, therefore, whistling would have answered instead of ringing the bell.

GANTT, P. J.—This is an action in which plaintiff, a boy fourteen years old, sues for damages sustained by him, from one of the trains of defendant, on the thirteenth of July, 1887. The petition charges negligence in the running of the train; the failure to have a watchman at the crossing of Fillmore street when the accident happened as required by ordinance; the failure to ring the bell as required by statute and city ordinance. Answer, general denial and plaintiff's contributory negligence.

The evidence shows that plaintiff lived in the block between Fillmore and Elwood streets in St. Louis, near the bank of the Mississippi river, east of the defendant's tracks, in the city of St. Louis ; that he had lived there all his life, about one hundred yards from the station where the accident happened ; that, on the afternoon that he received the injury, he came from his home to the crossing of defendant's tracks by Fillmore street. As he reached the crossing a freight train was moving south on the west track. There were three tracks across this street. There is a depot on the west side ; a space of four to five feet between the east and the middle track, and about six feet between the middle and the west track. The accident occurred about seven o'clock in the afternoon, the time for the Carondelet accommodation to arrive from the south at this station. Standing on this middle track at this crossing, one can see two blocks south on defendant's track.

Plaintiff testified that when he was struck he was standing between the rails of the middle track on Fillmore street crossing with his foot on the west rail thereof ; that he had been standing there about a minute, for the freight train to pass him ; that when he came on the track he looked both ways and did not see any train. On cross-examination he modified this statement by saying that "he *looked once* as he stepped on the middle track, and then stood there watching the freight caboose go by." The bell on the freight train was ringing, and that train was making a great noise. He says no bell was ringing on the engine that struck him, but on cross-examination he says he didn't hear any bell ringing on the engine that struck him, and that it was not probable he would have heard it owing to the noise made by the freight train, which he was watching. The first intimation of danger he had was the whistle of the engine, just before it struck him. The train stopped at the usual stopping place. It was a passenger train of three coaches, and came from the south

that afternoon.   The train men all testify the bell was
rung constantly that afternoon on the engine.   Plain-
tiff's witnesses did not hear the bell rung.   Plaintiff's
brother testified it did not ring.   Plaintiff himself says
he did not hear it ring.   The engineer testified that his
train reached Fillmore street station twelve minutes
past seven that afternoon.   Had his train well in hand,
running between three and four miles an hour; stopped
the engine on the crossing.   When he got near the
crossing had applied the air so as to stop at the station,
and was watching out, when he heard the fireman
halloo, "Oh! Oh!" when he saw the boy fifteen or
twenty feet ahead of his engine on the track.   He
sounded his whistle as soon as he saw him, and applied
all the balance of his air to stop the train.   Did not see
plaintiff on the track until the fireman gave the alarm.
The fireman and conductor both corroborated this
account of the engineer.   Sections 1234 and 1239, of
article 5, revised ordinances of city of St. Louis, relat-
ing to ringing of bells by railway trains, were read in
evidence.   The plaintiff was badly lacerated, and his
leg amputated.

     The defendant demurred to the evidence, and its
instruction was overruled.   Defendant also asked, and
the court refused, the following instruction :   "If the
jury find from the evidence that the defendant's pas-
senger train called the 'Carondelet Accommodation'
approached the defendant's station at the foot of Fill-
more street at the time of the accident to plaintiff, at a
low rate of speed, to-wit, four or five miles an hour,
and that when the said train had approached to within
thirty or forty feet of said station running at or about
the rate of speed above mentioned, the plaintiff ran or
went in front of said train when said train was within
fifteen or twenty feet of him, and that defendant's agents
in charge of the engine drawing said train after seeing
said plaintiff on the track in front of said engine did
all they could under the circumstances to stop said

train and avert the accident at the time said plaintiff was struck, then they must find for the defendant."

Which said instruction the court refused to give to the jury ; to which action of the court the defendant at the time duly excepted.

The court then at the instance of plaintiff gave the jury the following instructions: "1. If the jury should find from the evidence that the plaintiff, Louis Dlauhi, went upon defendant's north-bound track and stopped at a point on said track, where it crossed Fillmore street, to await the passage of one of defendant's trains upon its south-bound track, and that, whilst going upon said north-bound track and standing upon said track, said Louis did not look or listen for the approach of a train on said north-bound track, and that whilst upon said track he was struck and injured by the tender of an engine, and train propelled by steam power moving northward on said track ; and if the jury further find from the evidence that said Louis did not exercise care according to his age and discretion in so going upon and standing upon said track without looking or listening for the approach of a train upon said track, yet if the jury further believe from the evidence that the bell on the engine of said train so moving north on said north-bound track was not sounded eighty rods from the crossing of Fillmore street, and not sounded at intervals until it crossed said street ; and if the jury believe from the evidence that such failure to so sound said bell directly caused said injury to the plaintiff, then plaintiff is entitled to recover, and your verdict should be returned in his favor.

"2. If the jury believe from the evidence that the plaintiff, Louis Dlauhi, whilst upon Fillmore street in the city of St. Louis at the point where said street was crossed by defendant's railway track, was struck and injured by the tender attached to defendant's locomotive and train propelled by steam power; and if the jury further believe from the evidence that the bell

upon said engine was not sounded eighty rods from said crossing and was not sounded at intervals until said street was crossed by said engine, then the burden of proving that the failure to so sound the bell on said engine did not cause said injury to the plaintiff is upon the defendant."

To which action of the court in giving said instructions, and each of them, defendant at the time duly excepted.

The court of its own motion gave the jury the following instructions: "3. By mentioning the 'burden of proof' and 'preponderance of evidence,' the court intends no reference to the number of witnesses testifying concerning any fact or upon any issue in the case, but simply by way of briefly expressing the rule of law, which is that, unless the evidence (as to such issue) appears in your judgment to preponderate, in respect of its credibility, in favor of the party to this action on whom the burden of proof (as to such issue) rests, then you should find against such party, on said issue.

"4. If you find from the evidence that the bell on the engine that struck plaintiff was sounded at intervals for eighty rods before reaching the Fillmore street crossing, your verdict should be for the defendant.

"5. If you find from the evidence that the bell of the engine that struck plaintiff was not sounded at intervals for eighty rods before reaching the Fillmore street crossing, but further find from the evidence that such failure to sound the bell did not cause said injury to the plaintiff, then your verdict should be for the defendant.

"6. If the jury find from the evidence that the defendant's passenger train called the 'Carondelet Accommodation' approached the defendant's station at the foot of Fillmore street at the time of the accident of plaintiff at a low rate of speed, to-wit, four or five miles an hour, and that when said train had approached to within thirty or forty feet of said station running at or about the rate of speed above mentioned and with no

engine bell thereon sounding for eighty rods, at inter-vals, before reaching Fillmore street crossing, the plaintiff ran or went in front of said train when said train was within fifteen or twenty feet of him, and that the defendant's agents in charge of the engine drawing said train, after seeing said plaintiff on the track in front of said engine did all they could under the circumstances to stop said train and avert the accident at the time said plaintiff was struck, then they must find for the defendant."

"8. What constitutes 'ordinary care' as mentioned in these instructions depends on the facts of each particular case. It is such care as a person of ordinary prudence would exercise (according to the usual and general experience of mankind) in the same situation and circumstances as those of the person or persons in this case, with reference to whom the term 'ordinary care' is used in these instructions. The omission of such care is negligence in the sense in which that word is used in these instructions.

"9. If you find from the evidence that defendant's agents in charge of said engine that struck plaintiff did not cause the bell thereon to be sounded at intervals for a distance of eighty rods before reaching the Fillmore street crossing, then such omission would be a want of ordinary care on their part within the meaning of these instructions."

"12. If, under the other instructions, you decide to find for plaintiff, you will assess his damages at such sum as you believe from the evidence will be a reasonable compensation to him for the bodily and mental pain he has suffered in consequence of said injuries, as well as for any such permanent disability or injury as you may find from the evidence he has sustained by reason thereof. If, on the other hand, under the other instructions, you decide to find for defendant, your verdict need merely state that you find for defendant on the issues joined."

To which action of the court in giving said instructions, and each of them of its own motion, defendant at the time duly excepted.

The jury thereupon returned a verdict in favor of plaintiff for $4,900.

Does the instruction, numbered 1, given at plaintiff's request, correctly declare the law of the case? If it does, then there is no longer such a defense as contributory negligence in this state. This instruction told the jury, in unmistakable terms, that, notwithstanding plaintiff went upon the railroad track and *stood there* without looking or listening, and, notwithstanding he did not exercise care according to his age and discretion in so doing, and standing upon said track without looking or listening for the approach of a train, yet, if defendant failed to ring its bell eighty rods from the crossing, and such failure directly caused the injury to plaintiff, then plaintiff was entitled to recover.

This instruction was unanimously condemned by this court in *Guenther v. Railroad,* 95 Mo. 286. Said Judge BRACE in that case: "Reading the first and second together, the jury were, in effect, told that, although the deceased had been guilty of negligence contributing directly to his death, yet, if they found from the evidence that no bell was rung while the locomotive was passing over the street or road immediately before the accident, and that the death of said Jacob Guenther directly resulted from the omission to sound the bell, they should find for plaintiff. In other words, the jury were told here are two acts of negligence, one of the plaintiff in being on the track, the other of defendant in not sounding the bell, concurring at the same time and place, the result of which is death. Now, if you find that the death resulted directly from the failure to ring the bell, you must find for the plaintiff, practically ignoring deceased's contributory negligence, *without which* no death could have happened, by leaving the jury at liberty to select out the defendant's act of

negligence and say that was the direct cause of his death, and to render a verdict accordingly; and, under it, the jury had only to find the bell was not being rung immediately before and at the time Guenther was struck in a publicly traveled street, in order to find a verdict for the plaintiff, notwithstanding Guenther's act of negligence contributed directly to his death. It is not necessary to quote authorities to show that this is not the law."

Notwithstanding the confidence expressed in this position, counsel for respondent challenge it. In *Kelley v. Railroad*, 75 Mo. 138, Judge HENRY, speaking for the whole court, says, "that it is such negligence for one to attempt to cross or *get upon* a railway track, *at a public crossing or elsewhere*, without looking and listening for an approaching train, *as precludes a recovery* for an injury sustained by him from a passing train or locomotive, *whether the company's negligence also contributed directly to produce the injury or not*, has so often been decided by this court, that it must now be regarded as the settled law of this state," citing *Maher v. Railroad*, 64 Mo. 267 ; *Fletcher v. Railroad*, 64 Mo. 484. In this last case Judge HENRY, with approval, quotes from the opinion of Judge ALLEN in *Gorton v. Railroad*, 45 N. Y. 662 : "It is not imposing an onerous duty upon the traveler crossing a railroad in *broad daylight*, over which trains of cars were frequently passing and are liable to pass at any time, to make use of the most common and *lowest degree of observation and care* and to cast his eyes in both directions and in every direction from which danger may be apprehended. The doctrine has been declared by this court, and reaffirmed, that a traveler approaching a railroad track is bound to use his eyes and ears, so far as there is an opportunity ; and when, by the use of those senses, danger may be avoided *notwithstanding the neglect of the railroad servant to give signals, the omission of the plaintiff to use his*

*senses* to avoid the danger, is concurring negligence, entitling the defendant to a *nonsuit*."

In *Zimmerman v. Railroad*, 71 Mo. 476, the exact point was made. "The doctrine contended for is that, although a traveler could have seen, if he had looked, or heard, if he had listened, for an approaching train, yet, without looking or listening, he may go upon the track and not be chargeable with contributory negligence if run against and injured by a train of cars passing over the road ; that he may shut his eyes, and close his ears, and walk, drive or ride across or along a railroad track, and if the *company fails to blow* its whistle or ring its bell, as required by law, his negligence is canceled by that of the company, and ceases to be a proximate cause of the injury, of which the negligence of the company is *then* to be regarded as the sole proximate cause." This court wholly repudiated such a doctrine then. *Bell v. Railroad*, 72 Mo. 50 ; *Purl v. Railroad*, 72 Mo. 168 ; *Turner v. Railroad*, 74 Mo. 602.

In *Powell v. Railroad*, 76 Mo. 80, the facts were very similar to the facts in the case now under consideration. In that case, Judge SHERWOOD speaking for the court says, "making the broad concession, for argument's sake, that the testimony tended to show the defendant was negligent, still there was nothing to show that this, of necessity, caused the injury." "On the contrary thereof, the only inference which can be fairly drawn from the testimony is that but for the boy's neglect to act in a manner suitable to the situation in which he was placed, suitable to the dangerous machinery by which he was surrounded, that, but for his heedlessness, not to say, absolute rashness in failing to look and listen for the train, of whose expected arrival he was fully aware, the accident would not have occurred." "That he could have seen the train if he had looked ; that he could have heard, if he had listened, is abundantly established." This court

reversed that case without remanding. In the same volume, *Lenix v. Railroad*, 76 Mo. 86, the same doctrine is reiterated, and the failure to give the signals was held not to condone the contributory negligence of plaintiff. And so the law was written and accepted until the decision in *Kelley v. Railway & Transit Co.*, 95 Mo. 279, with this qualification, that it has been held, that, notwithstanding plaintiff's contributory negligence, he may recover if the defendant's negligence, which directly caused the injury, occurred *after the defendant knew,* or by the exercise of reasonable or proper care might have known, of the *danger or peril* in which the injured party stood, and, by the exercise of ordinary care, might then have prevented the injury, or if the company failed to discover the danger through the recklessness or carelessness of its employes when the exercise of ordinary care would have discovered the danger and averted the calamity. *Kelley v. Railroad*, 75 Mo. 138; *Scoville v. Railroad*, 81 Mo. 434; *Harlan v. Railroad*, 65 Mo. 22; *Isabel v. Railroad*, 60 Mo. 482.

The instruction, numbered 1, given for plaintiff in this case, and the instruction given and condemned by this court in *Guenther v. Railroad*, 95 Mo. 286, were given by the learned circuit judge, who tried those cases, upon the authority of the case of *Kelley v. Railway & Transit Co.*, 95 Mo. 279. And, it must be confessed, that if we accept the quotation made by Judge NORTON from the opinion of the St. Louis court of appeals in the same case, reported in 18 Mo. App. 151, as the law, there would appear to be ample justification of this instruction ; but it seems evident that Judge NORTON did not so understand the law, and the instructions in the *Kelley case.* He says : "It is argued that said instructions are erroneous, *because* they authorize a recovery for plaintiff, notwithstanding his negligence, if defendant either knew, or by the exercise of ordinary care could have known, the danger in which plaintiff had

Dlauhi v. The St. Louis, I. M. & S. Ry. Co.

placed himself in time to have avoided injuring him, and failed to exercise such care. *This contention is not well founded.* When a plaintiff is guilty of contributory negligence, the company is nevertheless liable, if, by the exercise of ordinary care, *after a discovery by defendant of the danger in which plaintiff stood,* the accident could have been prevented, or if the company failed to discover the danger *through the recklessness* or carelessness of its employes, when the exercise of ordinary care would have discovered the danger and averted the calamity." And citing with approval the former cases decided by this court.

So that, if, as we interpret the *Kelley case* in 95 Mo. 279, it only means to announce the qualification of the rule that plaintiff's contributory negligence will preclude a recovery, as uniformly held by this court prior to that decision, then we indorse it ; but if it means, as interpreted by the learned judge who tried this case in the circuit court, that the negligence of the defendant in not ringing its bell of itself gave plaintiff a good cause of action, notwithstanding he might be guilty of the most reckless contributory negligence, and without reference to when defendant's servants discovered the danger to plaintiff, then we unhesitatingly say that decision is not in harmony with an almost unbroken line of decisions of this court and ought not to be followed. And this qualification of the rule has been expressly limited by the decisions of this court to those cases in which the injured party was not a trespasser. *Barker v. Railroad,* 98 Mo. 50.

"At railroad crossings there are reciprocal duties. Both the company and the public have a right of way ; neither is exclusive. It is the duty of each to so exercise their respective rights as not to interfere unnecessarily with the rights of the other. A crossing is a known place of danger. The engineer of a train when he approaches it has a right to expect that persons may be there, hence it is his duty to approach it with his

engine under control ; the citizen when he attempts to cross knows that a train may come at any moment. It is his plain duty to look out for it, and avoid it if possible." *Moore v. Railroad*, 108 Penn. St. 349.

It is not pretended the train was running at an unlawful rate of speed. It came to the station about the time it was due and stopped at the usual place. The court of its own motion withdrew the violation of the ordinance as to keeping a watchman, and as to ringing the bell on the engine continuously, from the jury, so that the issue was narrowed down to the sole question whether the defendant failed to ring its bell eighty rods before reaching the crossing and at intervals until it passed the crossing where the accident happened. As before stated the positive evidence on the part of the defense is that the bell was rung continuously ; that on part of the plaintiff is negative save that of the witness Vance or Frank Dlauhi. His evidence might well have been wholly disregarded by the court and the jury, as he testifies that, at the very moment his brother was being crushed under this powerful engine that "*my object in looking was to have a good case against the railroad company.*"

But, conceding that the bell was not rung as required by statute or ordinance, what was the proximate cause of this injury? We must assume that this boy, in the absence of all proof that he was weakminded, or that he was not possessed of ordinary intelligence, knew it was dangerous to stand between the rails of a railroad track. He had been reared in the sight of this railroad, and in a block of the depot. He knew also it was about the time for this train to arrive; the evidence on his part shows that passengers had collected at the depot waiting for the train. It was broad daylight. He could have seen an engine approaching for two blocks, from the south. His view was unobstructed. He voluntarily placed himself in a place of known danger. According to his own evidence he could have

stood between the tracks in perfect safety while watching the outgoing freight. If it be said that the engineer ought to have seen him, with equal force it can be asserted that he ought to have seen the train approaching. It was quite as easy for him to see the train as for the engineer to see him.

Under these circumstances, then, we think the first instruction for plaintiff incorrectly stated the law, and moreover was contradictory of the sixth instruction given by the court of its own motion. The defendant was entitled under this evidence to an instruction on contributory negligence in accordance with the views herein expressed, and as set forth in defendant's refused instruction and the sixth given by the court of its own motion. For this error in the instructions the cause is reversed and remanded. All the judges of this division concur.