EMIL F. WILLIAMS, Respondent, v. KANSAS CITY ELEVATED RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 28, 1910.

1. NEGLIGENCE: Humanitarian Rule. Though a plaintiff is guilty of contributory negligence in going upon a street railway track at a street crossing in a city, yet if the motorman in charge of the car saw him in his danger in time to have stopped, the railway company is liable for his injury; and even though the car could not be stopped after seeing him in his peril, yet if it was the motorman's prior negligence which made it impossible to stop, the company is still liable.

2. ———: Instructions. In a case based on the humanitarian rule, it is proper to refuse an instruction which does not include that hypothesis.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback*, Judge.

AFFIRMED.

*John H. Lucas* and *Ben T. Hardin* for appellant.

*H. G. Latshaw* and *W. D. Summer* for respondent.

ELLISON, J.—This is an action for personal injury. The judgment in the trial court was for the plaintiff.

It appears that plaintiff was driving a large wagon drawn by two horses on one of the streets of Kansas City, Kansas, running east and west, and that defendant's street car line ran along one of the streets north and south. There were three acts of negligence charged in the petition. The two first were abandoned by plaintiff and the cause was submitted to the jury on the third. That was, in effect, a concession of plaintiff's negligence, but stated facts which bring the case under what is known as the humanitarian rule; that is to say, that defendant's motorman saw plaintiff in a position of peril in time to have avoided the collision by the exercise of ordinary care.

A collision and an injury to plaintiff by being knocked off his wagon, while on the crossing, was shown and is practically conceded.

The motorman testified that when he first saw plaintiff and his team he was approaching the track from the west, and that his car was then about fifty feet away. He then places plaintiff in such position and situation as to show him to be negligent. He stated that plaintiff had the lines lying over the dashboard of his wagon and that he was reading some meat orders which he held in his hand, and that his horses were trotting. He then stated his endeavor to stop his car by throwing off the electric power, putting on the brake and allowing sand to run on the track from the sand box; but that, notwithstanding this effort, the car ran into the wagon and plaintiff was knocked off.

There is a great deal of evidence preserved in the record, but since plaintiff's practical concession that he was himself guilty of negligence by submitting the case on the humanitarian rule, there is not much of it that need give us concern. The chief questions relate to whether the motorman was running his car at such neg-

ligent rate of speed, in view of the fact that he was approaching a street crossing in a city, as that it would disable him from stopping in time to avoid a collision with teams which might be passing over the tracks at such crossing; and though not guilty in that respect, whether he made such an effort to stop as would have avoided a collision even though he had been running at a proper rate of speed. The law is that in such place and situation, if a motorman or engineer drives his car at such speed that he could not stop it if he came in sight of one who might be crossing over the track, he cannot excuse himself by showing his inability to stop by the utmost effort after he did see him. The reason being that his being unable to stop came about from his inexcusable negligence before he saw him. That is, he willfully disabled himself. [Koenig v. Union Depot Ry. Co., 173 Mo. 698, 724; Klockenbrink Ry. Co., 172 Mo. 678, 689; Moore v. St. Louis Transit Co., 194 Mo. 1; Eppstein v. Ry. Co., 197 Mo. 720; Murrell v. Ry. Co., 105 Mo. App. 88, 94; Abbott v. Ry. Co., 121 Mo. App. 582.] There was evidence which tended to show the car was running from eight to ten miles an hour and that the motorman had his head turned sideways, talking to some one standing by his side. There was also evidence tending to discredit the motorman, among other of that tendency may be mentioned that he stated plaintiff had dropped his lines over the dashboard and was reading, when in fact the wagon did not have a dashboard. We do not think it necessary to discuss the evidence in detail and will content ourselves with the statement that an examination of the record has satisfied us that a case was made for the jury, and that therefore the trial court properly refused the demurrer to the evidence.

Defendant's instructions "A," "D" and "E" were properly refused for the reason that they directed a verdict for defendant if plaintiff was negligent, without

including the hypothesis of the motorman being able to avoid the collision notwithstanding such negligence.

Instruction "B" was properly refused for the reason that it is not based on the evidence, and is contrary to defendant's theory of defense. It submits that the motorman in seeing the plaintiff approaching the track, had a right to suppose that he would stop before reaching it. The defense was that the plaintiff had the lines down and his horses trotting while he was occupied in reading. In such circumstances there was no foundation for the instruction asked.

Instruction "C" was also refused. It reads as fol·lows:

"If you believe and find from the evidence in this case that when plaintiff's team came to a position where the motorman first could see it, it was within eight or ten feet of the car track and going in a trot, and that plaintiff drove onto the track in front of the car in such close proximity thereto that the motorman was unable, by the exercise of ordinary care, to stop the car in time to avoid the collision, then the plaintiff cannot recover and your verdict must be for the defendant."

The instruction was faulty in omitting all reference to the motorman's exercising care in approaching a crossing in a city situated as was this one. There was evidence tending to show that he was not exercising ordinary care. It should have been left to the jury to say whether the motorman was in the exercise of due care in running his car eight or ten miles an hour in approaching a crossing in a city where a wagon and team could not be seen until it got within eight or ten feet of the track. His due care should also be judged by a consideration of testimony that he was talking, with his head turned sideways. The instruction was likewise improper in referring to the position of the team "where the motorman first could see it," without something requiring him to have been in the exercise of ordinary care by way of a looking out for teams. In the exercise

of ordinary care he might have been able to see the team sooner than he did.

Instruction No. 3, for plaintiff, submits the case on the humanitarian doctrine, in terms more liberal than defendant was entitled to.

We have examined defendant's objections to the competency of one of the jurors, and find they are not of sufficient substance to justice a reversal of the judgment. The trial judge examined him thoroughly touching his qualifications and became satisfied he was unprejudiced and could render an impartial verdict. We do not feel. that we would be justified in a different view.

Nor do we think there was misconduct on the part of plaintiff's attorney in his argument to the jury. His reference to the sensitiveness of defendant's attorney did not have reference to other trials in like cases which had resulted adversely to defendant. As we interpret such reference, it was to what had transpired in the trial of this case.

On the whole record we are satisfied the judgment should be affirmed. All concur.