GRANDISON A. GOBEN, Appellant, v. QUINCY, OMAHA & KANSAS CITY RY. CO., Respondent.

Kansas City Court of Appeals, December 13, 1920.

1. **NEGLIGENCE: Humanitarian Rule: Unlawful Rate of Speed: Obstructed Crossing.** Where the view is obstructed both to traveler by automobile approaching a public crossing and likewise to train crew running at a high rate of speed in violation of law regulating speed at said crossing, and the same is a place where train crew was required to maintain a lookout and where a traveler is likely to be on the highway in the use thereof, and neither can see the other until the traveler is close to the danger line, the defendant is liable where plaintiff could have escaped had the train been running at a lawful rate of speed and trainmen could have seen and avoided the injury.

2. ———: ———: ———: **Demurrer: Evidence Sufficient to Require Submission to Jury.** Where the evidence showed that the high rate of speed was in violation of law, and the reason the trainmen whose duty it was to maintain a lookout at a public crossing could

not stop, after a traveler could have been seen, was because the trainmen had negligently put the speed at a rate where they could not stop in time to avoid injuring the traveler, after his peril was, or with ordinary care, could have been discovered, and is the same as if they had discovered his peril in time and had negligently failed to act, and such facts are sufficient to require submission of case to the jury under humanitarian rule.

3.  **INSTRUCTIONS: Humanitarian Case: Taking Rule Entirely Out of Case Erroneous.** In an action for damages based upon a violation of the Humanitarian rule, submitted to the jury upon that theory, where plaintiff's evidence does not show contributory negligence as a matter of law, and there was no plea of contributory negligence in the answer, instructions which take the humanitarian rule entirely out of the case, are erroneous.

4.  **APPEAL: Evidence: Objection Insufficient: Not Reviewable.** Where certain evidence as to an experiment made by an automobile driver was objected to, and no reason given the trial court for its inadmissibility, the objection was insufficient to preserve the point for review on appeal.

Appeal from Adair County Circuit Court.—*Hon. James A. Cooley*, Judge.

REVERSED AND REMANDED.

*C. E. Murrell* and *A. Doneghy* for appellant.

*Campbell & Ellison* and *J. G. Trimble* for respondent.

TRIMBLE, J.—Plaintiff's action is for damages resulting from a collision at a railway crossing in the city of Kirksville. The petition counts on a violation of the humanitarian rule, charging that there was an ordinance in force limiting the speed of railroad trains in said city to seven miles per hour; that defendant's train was being negligently run at a greater speed, to-wit—thirty miles per hour, and negligently struck plaintiff on the crossing and injured him and his automobile; that while plaintiff was approaching the track oblivious of danger the operatives of the engine saw or could have seen his peril in time, by the exercise of ordinary

care, to have prevented the injury, but negligently failed to discover plaintiff's peril or to avoid injuring him after such discovery. The answer was a general denial.

A demurrer to the evidence was overruled, and the cause was submitted to the jury which returned a verdict for defendant. Plaintiff appealed, alleging error in the admission of evidence and in the giving of instructions for defendant. However, if as the latter claims, no case for the plaintiff was made, the alleged errors, if any, cannot affect or change the result already reached in the trial court.

The crossing in question is on Centennial Avenue in the northern portion of the city of Kirksville. Defendant's railroad runs east and west and Centennial Avenue lies north and south. Plaintiff, traveling in a Ford Automobile of the coupe type, turned into Centennial Avenue at a point 560 feet south of the crossing and then went north to it where he was struck by defendant's west-bound passenger train going, so plaintiff claims, at thirty miles per hour. The engineer, defendant's witness, admitted he was going twenty miles per · hour. As stated before, the ordinance limit was seven miles. The collision occurred shortly after ten o'clock on the morning of October 15, 1917.

The train was, of course, running on the main track, and a switch or "Y" track lay south of it and twenty-five feet distant therefrom. Plaintiff, therefore, had to cross this switch track before reaching the point where the collison occurred. The ground to the east of Centennial Avenue, and to plaintiff's right as he went north along the above mentioned 560 feet, was open pasture land with nothing thereon to obstruct plaintiff's view of an approaching train during his traversal of the first and greater portion of said distance. There were, however, four box cars and a pile of telegraph poles, the former standing on the switch and extending up close to the main track and east of Centennial Avenue, and the latter, piled about six feet high, lay east of the box cars "on the hill" north of the switch track.

The plaintiff testified that from the time he, turned north on Centennial Avenue until he got to the mouth of the alley, about 200 feet south of the crossing, he at various times, looked to see if a train was in sight but saw none; that at the alley he came almost to a complete stop and listened and looked for a train but did not see or hear any. He testified that at this point, and from thence on to the switch, his view of an approaching train was cut off by the box cars and poles, that he listened for a train but heard none and kept looking and was looking to the east as he went slowly toward the switch and crossed over it and got far enough past the obstacles to see down the track; that when he got ten or fifteen feet south of the switch he saw the train about sixty or seventy yards away, saw that it was coming very fast, and tried to stop his automobile but owing to a slight down grade from the switch to the main track, his car had started up a little as it left the switch and, when he saw the train, he was unable to stop before it got on the track and then was likewise unable to get on across before the engine struck him, owing to the high speed at which the train was going; that no effort was made to stop or slacken the speed of the train; that the trainmen could have seen him as soon as he could see them; that if he had had two seconds more he would have gotten across and out of danger.

Defendant claims that the photographs in evidence, which were taken on the afternoon of the day of the accident, conclusively show that the box cars and poles did not obstruct the view; but manifestly we cannot say they would not, at least from the time a traveler reached the alley 200 feet north of the crossing and from thence on until he had passed over the switch. The photographs show that the roadway of Centennial Avenue, at a point a short distance before the switch was reached, was lower than any other portion thereof and lower than the ground next to the railroad and east of the Avenue. The photographs also disclose that at the

crossing and extending for some distance to the east
the track was below the natural surface of the ground,
how much below is not shown. Four freight cars are
not shown in the photographs, but only one, and that
at a point considerably east of the avenue. While it
may appear from the photographs that the view of a
train would not be obstructed at a point in the Avenue
217 feet from the crossing and further south on Cen-
tennial Avenue, yet they by no means show that the
view would not be obstructed, as plaintiff says it was, on
that portion of the Avenue lying between the mouth of
the alley and the switch. Hence, in passing upon de-
fendant's contention that, as a matter of law, plaintiff
is not entitled to recover, we must accept plaintiff's
claim that from the alley on to the switch and until that
was crossed, the obstructions were such as prevented
him from seeing the train and also prevented the train-
men from seeing him, and that they could see *him* as
soon as he could see them, which was when he got to
a point ten or fifteen feet south of the switch (which
would put *him* ten or fifteen feet from the main track
and the front end of his car nearer than that to the
line of danger). As stated, according to plaintiff's evi-
dence, the train at this time was sixty or seventy yards
away and no effort was made to slacken speed or to
stop. According to defendant's evidence, the engineer
was on the right hand or north side of the engine and
the latter obstructed his view of any one coming from
the south to the crossing and he did not see plaintiff
until the front wheels of his automobile came across on
the engineer's side which he says was but a moment be-
fore the collision. The fireman testified that he was
down on the deck attending to certain of his duties and
resumed his seat on the box on the left or south side of
the engine when he saw plaintiff's automobile approach-
ing the crossing and twenty-five or thirty feet from
it and he hollered to the engineer as quick as he could.
He would not say how far the engine was from the
crossing when he saw the automobile, but says the colli-
sion occurred very quickly after he saw plaintiff. So

we may eliminate from the case any idea that the train-men were led to think the plaintiff would stop before getting into danger, for no claim of that kind is made, and, according to their own evidence, he was in a dangerous situation or inevitably going into it when he was first seen by them.

With this element elimated we have this kind of a case. Here is a public crossing at which, from a point 200 feet therefrom up to ten or fifteen feet from it, the view is obstructed both to the traveler approaching the crossing and likewise to the train crew about to pass over the same. The trainmen know the crossing is there, know that a traveler is likely to be on the highway and may be about to use the crossing, and that if he is there neither he nor they can see each other until the traveler is close to the danger line. And yet knowing all this the trainmen approached the crossing at a high rate of speed in violation of the law regulating the speed at that point. While they are doing this the traveler is within the obstructed portion of the highway and emerges from behind the obstructions in time to see the train sixty or sventy-five yards awey. He is in ten or fifteen feet of the danger line and vainly tries to stop but is unable to do so before his car rolls into the dead line and then he vainly tries to go on and get across. Had he been afforded two seconds more he would have succeeded. Even at the speed the train was going, had the trainmen seen plaintiff as soon as he saw them a slackening of speed in that time and distance would likely have afforded plaintiff opportunity to escape. But clearly had the train been going at a lawful rate of speed the trainmen could have seen and avoided the injury in the time they would have then had. Under these circumstances what is the proximate cause of the injury, plaintiff's lack of ordinary care in getting into danger or the trainmen's lack of ordinary care to avoid injuring him after he got into that situation? Although it would not be possible to stop the train in seventy yards going at the speed it

was, nevertheless, it's speed could have been slackened considerably in that distance. It was a light train, there were only four cars, and when the train stopped after the collision the cowcatcher was only 235 feet past the crossing. But undoubtedly if the train had not been going at such a high rate of speed it could easily have been stopped in seventy yards. This high rate of speed was in violation of law, and the reason the trainmen could not stop after plaintiff could have been seen was because the trainmen had negligently put the speed at a rate where they could not stop. Under such circumstances to negligently put themselves in a situation where they know they cannot stop in time to avoid injuring a traveler after his peril is, or with ordinary care could have been, discovered is the same as if they had discovered his peril in time and had negligently failed to act.

It was the duty of the trainmen to keep a lookout for persons at the crossing and defendant's liability is not limited to want of care after the discovery. [Williams v. Kansas City, etc., R. Co., 96 Mo. 275.] It was their duty to obey the ordinance as to rate of speed and in failing to do so they were guilty of negligence; and when they saw the plaintiff's peril or when, by ordinary care, the might have seen it, in time to avert a collision and fail to do so, the defendant is liable. [Morgan v. Wabash R. Co., 159 Mo. 262.] As stated in Murrell v. Missouri Pacific R. Co., 105 Mo. App. 88, 94, "although railway servants use every effort to avoid injury after discovering the peril of the person injured and find it impossible to do so, still, that will not excuse them in cases where they have been guilty of negligence before, which created the impossibility. [Maher v. Railway, 64 Mo. 267.]" [See, also, Williams v. Kansas City, etc., R. Co., 149 Mo. App. 489; Chappell v. United Rys. Co., 174 Mo. App. 126, 136.]

In Moore v. St. Louis Transit Co., 95 Mo. App. 728, 738, it was held that, notwithstanding plaintiff's negligence in getting on the track, yet if the train operator

discovered, or by the exercise of ordinary care could
have discovered, the plaintiff's peril in time to have
avoided the injury and failed to do so, such last mention-
ed negligence and not that of the plaintiff's was the
sole proximate cause of the collision. It was further
held that, had the street car been going at lawful rate
of speed, it could have been stopped or slowed down
so as to avoid the accident within the time and distance
the operator had in which to act. The case was certi-
fied to the Supreme Court where the same result was
reached, the court holding that the case should have
been sent to the jury notwithstanding plaintiff's negli-
gence in getting on the track, since, if the motorman
had been going at a lawful rate of speed, he could have
avoided the injury in the distance he had after plain-
tiff's peril was, or by ordinary care could have been,
discovered. [Moore v. St. Louis Transit Co., 194 Mo.
1, 12.]

In the case of Sullivan v. Missouri Pacific R. Co.,
117 Mo. 214 (as stated in the St. Louis Court of Appeals
decision in the Moore case, 95 Mo. App. l. c. 744), a
majority of the court, namely, four out of the seven
judges, held that "running at a speed prohibited by a
city ordinance was not a valid excuse for not stopping
the train and avoiding the injury if it could have been ·
stopped in time had the train been running at a lawful
speed." In other words, if the plaintiff in that case got
upon the track at such a time and distance in front of
the train as that, but for the defendant's unlawful speed
and that *alone*, the injury would have been avoided,
then the defendant's negligence in going at such unlawful
speed was the proximate cause of the injury, and the
plaintiff's negligence in getting upon the track was re-
mote in the chain of causation; but since the plaintiff
in that case voluntarily and knowingly went upon the
track in front of the approaching train, it was a ques-
tion for the jury to say whether or not his going upon
the track was at such a time and distance from the train

as that her negligence in so doing was the proximate
cause, or *concurred* with that of defendant's unlawful
speed as one of the proximate causes, of the injury.   In
that event the. inability to ·avoid the collision would
arise from either plaintiff's negligence or from *two*
things *combined,* plaintiff's negligence in knowingly and
voluntarily getting on the track *so close* to the train and
the defendant's negligence in going at an unlawful
speed.   If that were the case, then while in one sense the
inability to avoid the collision would arise from the un-
lawful speed, yet such would not be the *sole* proximate
cause.   And it was because instruction No. 5 in the
Sullivan case did not provide for such distinction, and
did not submit this matter to the jury, that it was deem-
ed erroneous.   [See Judge Black's Remarks, 117 Mo.
l. c. 229.]   In Hunt v. St. Louis and San Francisco R.
Co., 262 Mo. 271, the petition was in two counts, one
invoking the humanitarian rule and the other based on
simple negligence in the violation of an ordinance as
to speed.   On the humanitarian count the jury *found
for the defendant.*   And it was for this reason that the
majority opinion held the humanitarian rule could no
longer be regarded as in the case.   The opinion says
(p. 277), "while the humanitarian doctrine applies to
one who has thus exposed himself to injury, yet the jury
in the case found against plaintiff on that theory, and
it cannot be further considered," and that "whatever
duty defendant owed persons walking upon the track
its violation of the speed ordinance was but simple
negligence *in the circumstances of this case,* liability for
which is subject to be defeated by the contributory negli-
gence of the injured person."   (Italics ours.)   On this
basis was the case decided, and since the injured person
in that case (lying in a drunken stupor on or near the
track) was guilty of contributory negligence as a matter
of law, and, as the ·case then stood, in view of the ver-
dict, such contributory negligence, and not the viola-
tion of the speed ordinance, was the proximate cause
of the injury, and the case was accordingly reversed out-

right. But in the Moore and Sullivan cases the plaintiff's negligence could not be declared, as a matter of law, to be the *proximate* cause or that it was one of the contributory causes thereof. Hence those cases were reversed and remanded for a new trial.

In the case at bar, the petition counts upon a violation of the humanitarian rule, and, if the plaintiff's evidence as to the care he exercised in approaching the crossing takes the case out of the operation of that rule and leaves the case bottomed merely on simple negligence as defendant contends, then there was no plea of contributory negligence in the answer, and certainly we cannot say plaintiff's own evidence shows him to have been guilty of contributory negligence. We are, therefore, of the opinion that we cannot hold that plaintiff made no case; hence we must consider the instructions.

As stated, there was no plea of contributory negligence, plaintiff's evidence did not show contributory negligence as a matter of law, and, the petition was based on a violation of the humanitarian rule and was submitted on that theory. With matters in this shape the defendant asked and was given instruction No. 1 which told the jury that if from all the facts and circumstances in evidence they found that plaintiff attempted to cross the track without first looking and listening for an approaching train at a point where by looking and listening he could have discovered the train, he was guilty of negligence as a matter of law. It did not tell the jury what the result of such negligence would be but left them to infer that his negligence would defeat his recovery. This is intensified by instructions 2 and 3. The former told the jury that "it is not a compliance with the law for a diver to look and listen at a point where he cannot see or hear, but he must look and listen at a point where he can see and hear." And the latter said that "if there are obstructions to his sight, the duty to look and listen at a place where looking and listening will enable the driver to see or hear

is more imperative than if such obstructions did not exist.'' Under the humanitarian rule, however, plaintiff's negligence in going upon the track would not preclude his recovery if, after he has done so, the trainmen could have avoided the injury had they been exercising ordinary care. Under the pleadings and submission of the case, contributory negligence had no place in the instructions except in the event that such going on the track was so shortly before the arrival of the train that there was not sufficient time for defendant, in the exercise of ordinary care, to have avoided the injury. The inference in the above instructions that contributory negligence would unqualifiedly defeat plaintiff's case, is explicitly stated in instruction No. 5 which told the jury that if plaintiff when a point thirty-five or forty feet from the track saw the approaching train and thereafter, in the exercise of ordinary care, plaintiff could have stopped before going on the track or could, by the exercise of such care, have turned to the right or left and avoided going on the track, then he could not recover regardless of any other fact or issue.

Instruction No. 6 for defendant told the jury that if they believed the collision was due to defective or ineffective brakes on plaintiff's automobile the ''verdict must be for the defendant regardless of the rate of speed of the train, or regardless of whether the engineer saw or did not see the plaintiff prior to the accident.'' This was error since it took the humanitarian rule entirely out of the case.

The objection to the evidence as to the experiment made by an automobile driver showing that he was able to turn aside in' the space between the Y track and the main track before going across the latter was not sufficient to preserve it for review since no reason was given the trial court for its inadmissibility.

Other errors are complained of but they will doubtless be avoided upon another trial. For those errors heretofore discussed the judgment is reversed and the cause is remanded for a new trial. All concur.

## ON REHEARING.

ELLISON, P. J.—Plaintiff's action was instituted to recover damages for personal injury and for destruction of his automobile occasioned by a collision with one of defendant's trains at a street crossing in the city of Kirksville. The verdict and judgment were for the defendant and plaintiff duly prosecuted this appeal.

The petition is based on the humanitarian rule and the action is prosecuted as a case falling under that rule. But we find the instructions given for defendant are drawn as if the case was an ordinary one where negligence on plaintiff's part—contributory negligence— would prevent his recovery. This cuts out the foundation of plaintiff's action, viz, that though he was negligent and was oblivious to his danger, defendant knew it in time to have avoided injuring him. Defendants instructions, Nos. 4 and 5, in terms declare that if plaintiff was negligent—was not in the exercise of due care— the verdict should be for defendant. Instructions Nos. 3, 2 and 1 are along the same line and they too ignore plaintiff's case.

But if it be true, as claimed by defendant, that plaintiff's own testimony, given in his own behalf, shows that, as a matter of law, he has no case under the humanitarian rule, this error is of no consequence.

In its motion for rehearing, defendant finds fault with some statements of facts made in the original opinion. On re-examination we find there is no misstatement of the essential facts which tend to make a prima-facie case for plaintiff. He testified that as he approached the track at the crossing obstructions to his view prevented him seeing the train until he was within ten or fifteen feet of the track and that at the same distance defendants servants could have seen him, the train being sixty or seventy yards away coming at a speed of thirty miles per hour, and in this situation defendants servants made no effort to stop the train, or to slacken the speed. It does not meet the question

to say that no rate of speed is negligence *per se*, for the ordinance fixed the rate at not exceeding seven miles per hour.

Again, it does not affect plaintiff's case to quote that general statement in humanitarian cases, to the effect that defendant was only bound to begin an endeavor to avoid a collision *after* the servants saw plaintiff's peril and that after that time defendant could not stop. As stated in the foregoing opinion all that may be eliminated, and we have the case stated in that opinion and supported by the authorities therein cited. We are are satisfied both with the reasoning in the opinion and the result reached.

Defendant has cited us to a number of cases, principal among them is Schmidt v. Railroad, 191 Mo. 215, and Stotler v. Railroad, 204 Mo. 619. Those cases are unlike this. They were ordinary cases of negligence and contributory negligence and are not founded on the humanitarian rule.

We think the judgment should be reversed and cause remanded. All concur.