JENNIE COWHERD, Administratrix of the Estate of GEORGE COWHERD, deceased, Respondent, v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.*

Kansas City Court of Appeals. December 29, 1924.

1. **NEGLIGENCE: Evidence Held to Warrant Submission of Case to Jury on Humanitarian Theory.** In an action under statute to recover for death at public crossing caused by negligence of defendant, evidence *held* sufficient to warrant submission of case to jury on humanitarian theory.

2. ———: **Humanitarian Rule Stated.** The humanitarian doctrine of negligence seizes the actual facts as they exist and holds defendant liable for injury resulting from the failure to use required care under the then existing conditions.

3. **EVIDENCE: Negligence: Competent to Show That Trainmen Were Unable to Avert Collision After Discovering Peril of Deceased on Account of Their Negligence.** In action to recover for death at public crossing it was competent to show that those in charge of train were unable to avert collision after they saw deceased in a position of peril on account of their prior negligence.

4. **NEGLIGENCE: Trainmen Should Not Back Train Over Public Crossing Without Being in a Position to Signal in Case of Emergency.** Where deceased was killed at a much used public crossing, those in charge of train had no right to back it over the crossing blindly without someone being in a position to signal engineer in case an emergency arose.

5. ———: **Duty of Defendant to Station Trainmen in Such Places That Signals Could Always be Seen by Engineer.** It was the duty of defendant to station its servants in such places that signals, either directly or by being relayed to another servant, could always have been seen by the engineer.

6. ———: **Proper to Show Where Defendant's Servants Could Have Been Stationed in Operation of Train so That Signal to Engineer Could Have Been Given.** In action to recover for death it was proper to show where defendant's servants could have been sta-

tioned in the practical operation of train under circumstances so that a signal to engineer could have been effectively given.

---

*Corpus Juris-Cyc. References; Negligence, 29 Cyc., p. 530, n. 15; Railroads, 33 Cyc., p. 954, n. 30; p. 1047, n. 39; p. 1049, n. 48; p. 1083, n. 90; p. 1087, n. 36, New; p. 1129, n. 68.

Appeal from the Circuit Court of Jackson County.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*Atwood, Wickersham, Hill, Levis & Chilcott* for respondent.

*Hackney & Welch* for appellant.

BLAND, J.—This is an action under the statute to recover for the death of one George Cowherd, alleged to have been caused by the negligence of the defendant. There was a verdict and judgment in favor of plaintiff in the sum of $5000 and defendant has appealed.

The facts show that about 11:00 A. M. of August 4, 1921, George Cowherd and three ladies were riding in a five-passenger Ford automobile westward on Washburn, an east and west street in Higginsville, Missouri. The automobile in passing over one of the tracks of the de-fendant, intersecting the street at right angles, stalled and was hit by defendant's train. The automobile was demolished and Cowherd and Miss Pearle Jordan, who was seated in the front seat to his right, were killed. Washburn Street at the point of the collision was one of the main streets of Higginsville. It was paved and much used. Defendant had two tracks running north and south that crossed Washburn street, the west track was the main line track and the east track was a spur or industrial track, called the house track. The collision occurred on the house track. This track joined the main line some 500 or 600 feet south of the point of collision.

218 Mo. App.—44.

Cowherd was driving his car west on Washburn street, approaching the track; when he arrived at a point about sixty feet east of the house track he stopped and Miss Jordan, Mrs. Moran and Mrs. Rowe got into the car and rode with him until the car stopped on the track. Mrs. Morgan and Mrs. Rowe occupied the rear seat.

Appellant's switching crew was backing a drag of nine cars on the main line track north on to the house track. The north car in the drag was an oil tank car, the other eight were box cars. In approaching defendant's tracks from the east the view of the occupants of the automobile was obstructed, as was the view of the men on the drag of cars, by a building called a warehouse, which was located nineteen feet from the south curb of Washburn street and twelve feet east of the east rail of the house track. The dimensions of this building were about forty-five feet north and south and twenty feet east and west. There was another building south of Washburn street which was about seventy or eighty feet east of the warehouse. These two buildings obstructed the view of a westbound traveler on Washburn street and also the view of the men on the cars except when such traveler was between the two buildings or for a space of about seventy or eighty feet.

After the ladies got into the automobile it proceeded to travel in low gear at a little less than six miles per hour until it reached the house track where the motor stalled. Mrs. Morgan testified that when the automobile stopped she saw the train backing towards them, the rear or tank car being about three car lengths, or 120 feet, from the automobile. There were two brakemen riding on the north side of the tank car, one on the east and one on the west side. The train was going about six miles per hour. When the train got within about two car lengths, or eighty feet, of the stalled automobile these two men got off, one on each side, and began making signals to the engineer and fireman. When it became evident to those in the automobile that the train was not

going to stop the occupants of the automobile attempted to get out and those in the back seat succeeded. Miss Jordan got as far as the north running board and Cowherd "was getting up from the wheel" but was still in the car when the train struck it. Mrs. Morgan testified the train ran about sixty feet after the collision. Mrs. Rowe attempted to grab Miss Jordan and pull her out of danger but was unsuccessful in so doing. Mrs. Morgan testified that when the automobile stalled upon the track the two men on the tank car were in plain view, she could see them and they could see her.

Mrs. Rowe testified that the first thing she saw when she came from behind the warehouse building were the two men on the tank car; that one of them kept waving to the engineer but that the train did not slow down and he called upon the occupants of the car to jump, and they obeyed. She further testified the train ran eighty feet, or two car lengths, after it struck the automobile.

Plaintiff's evidence tended to show that the train could have been stopped within fifteen feet after the brakes had been applied. Defendant's engineer testified that he could have stopped within twenty-five or thirty feet after he received a stop signal; that he was seated in his cab on the west side of the engine looking to the north toward the crossing but observed no signal until the brakeman, Maroney, ran westward to a point, which the evidence shows was about fifteen feet west of the house track, and gave an emergency stop signal; that he then stopped the train as soon as possible. Defendant admits that the speed of the train was not decreased until about or immediately after the time of the collision. The evidence shows that the fireman was engaged at his work where he could not see a signal given on his side and the engineer could not see the signal of the brakeman, Anderson, who was on the west side of the tank car, on account of the arc of the curve in the track being toward the west and a telegraph pole situated on the inside of the curve between the engineer and Anderson.

It is admitted that prior to and when the north end of the tank car reached a point 120 feet from the point of collision that the engineer could have seen Anderson but defendant's evidence tended to show that the north end of the tank car was within thirty or forty feet of the automobile when it was first observed by the brakeman and was within fifteen or twenty feet when the automobile stalled on the tracks. Defendant's theory was that the engineer did not see the stop signals given by Anderson on account of the curve and the presence of the telegraph pole; that when brakeman Maroney saw that the train was not going to slow up he jumped off the tank car and ran to a point west and gave an emergency stop signal which was seen by the engineer. This was approximately at the time of the collision, which was, of course, too late to avert the accident.

The case was submitted to the jury by plaintiff on the humanitarian theory. There is no question but that there was ample evidence introduced on the part of plaintiff to make out a case under this theory. But defendant complains of the admission of certain testimony which it urges tends to show that it was negligent prior to the time the peril arose and insists that "the humanitarian theory deals with conditions as they exist upon the advent of peril and not with conditions as they might have been prior thereto." In this connection the record shows that on cross-examination of defendant's witness, Anderson and Maroney, plaintiff, over the objection of defendant, brought out that it was the duty of the brakemen to station themselves upon the train in such a position that signals could at all times be seen by the engineer, and that the brakemen knew that they were going into a position where the engineer could not see the signals given. Plaintiff also attempted to show by the engineer that if the brakemen stood on the box car immediately next to the tank car, the signal could have been seen by the engineer. This witness was asked whether he knew when he was backing up the train

that after he arrived at a point where the north car was three car lengths from the crossing he would be unable to see a brakeman on the north end of the tank car. On the same theory it is also assigned as error that the court refused to give defendant's instructions K, L, and M, which sought to withdraw from the jury the question as to whether the brakemen or other of defendant's em ployees could have been stationed at some other place than where they actually were.

The negligence alleged in the petition was that defendant failed to maintain a flagman, watchman, gates and alarm bells at the crossing for the purpose of warning the public; that defendant and its servants on the train failed to keep and maintain a reasonably careful lookout ahead and negligently failed to keep the train under reasonable control or sound or give a reasonable and sufficient warning of the approach of the train; that defendant "negligently failed to exercise ordinary care to slacken the movements of said train or cars or stop same or to exercise ordinary care to so operate and control or cause said train or cars to be so operated and controlled as to prevent said collision;" that deceased was in a position of peril and oblivious thereto and de fendant and its servants saw or by the exercise of ordi nary care could have seen his position and peril before the collision occurred and in time by the exercise of ordinary care to have stopped said train of cars or caused the speed thereof to have been slackened.

The humanitarian doctrine of negligence "seizes the actual facts as they exist and holds defendant liable for injury resulting from the failure to use the required care under the then existing conditions." [Griffin v. St. Louis Transfer Co., 193 S. W. 807, 810; Henson v. Railway, 256 S. W. 771, 774; Grout v. Electric Ry. Co., 125 Mo. App. 552, 562.] Therefore, the actions of defendant's servants in this case must be considered in the light of the conditions and surroundings as they existed at the time and place of the collision and there is no lia-

bility on the part of defendant if they could not have averted the collision by the means at hand, unless the impossibility of averting it was caused by their negligence before the peril arose.

"If the deceased had been discovered on the track as soon as the locomotive came out of the cut, and the evidence was that he could not sooner have been seen by the engineer or fireman, and it was then impossible, with safety to the train and those aboard, to stop the train in time to save the life of deceased, there is no principle of law upon which the company could be held liable, *unless guilty of negligence before, which created the impossibility.* (Italics ours.)     [Maher v. Railroad, 64 Mo. 267, 276, 277.]

"If, then, the law charges those in control of such dangerous agencies with the duty of active vigilance, at such places, then the fact that they did not see the person injured will not, in such cases, necessarily exonerate the corporation from liability. If such failure to so discover him was the result of the omission of that measure of duty, which the law requires, in view of the locality, circumstances and dangers to be anticipated, and the due observance thereof would have enabled the persons in control of dangerous agencies of this sort to have avoided the injury by the use of reasonable care, then and in such case, such omission and want of reasonable care is, under the law, held the proximate cause of the injury, and liability for the resulting damage may then exist, notwithstanding the negligence of the person injured." [Hilz v. Mo. Pac. Ry. Co., 101 Mo. 36, 53, 54; Sullivan v. Mo. Pac. Railroad, 117 Mo. 214, 228; Moore v. St. Louis Transit Co., 194 Mo. 1; Moore v. St. Louis Transit Co., 95 Mo. App. 728; Murrell v. Railroad, 105 Mo. App. 89, 94; Williams v. K. C. Elevated Railroad, 149 Mo. App. 489; Chappell v. United Railways Co., 174 Mo. App. 126, 136; Goben v. Q. O. & K. C. Rd., 206 Mo. App. 5; State ex rel. v. Trimble, 260 S. W. 1000, 1003;

Morgan v. Railroad, 159 Mo. 262; Brooks v. Railway, 35 Mo. App. 575.]

In the case last cited plaintiff was driving his cattle over defendant's railroad crossing when one of defendant's trains suddenly came out upon the main line and backed over and killed plaintiff's steer. On account of the presence of a box car in the backing train and a curve in the railroad track the engineer could not see ahead of his backing train and did not discover plaintiff's cattle on the track; nor could the conductor for a like reason communicate by signal to the engineer though he was in a position in the backing train where he saw plaintiff's cattle in time to have stopped the train had he been able to have promptly communicated to the engineer. The court at l. c. 578, 579, said—

"The defendant's first ground of appeal is that the circuit court erred in its refusal to give the instruction which was asked on the part of defendant, and which told the jury that if they believed that defendant's servants in charge of defendant's train, after they discovered plaintiff's cattle on the defendant's road, used proper diligence and endeavor to avoid injuring them they must find for defendant.

"This instruction was properly refused. It ignores material issues in the case. It is too narrow and restrictive in its scope. To affirm that the defendant would be only liable if after the discovery of the plaintiff's cattle on the track by the defendant's servants in charge of the colliding train would be a gross perversion of the principles of law which should govern a court and jury in disposing of a case whose facts are like this.

"It may be conceded that it was impossible for defendant's servants in charge of said train to have checked it after the discovery of the perilous situation of the plaintiff's cattle, still this fact would not exonerate the defendant if guilty of negligence beforehand which created the impossibility. [Maher v. Railroad, 64 Mo. 297; Dunkman v. Railroad, 95 Mo. 232; Rine v. Railroad,

88 Mo. 392; Yarnall v. Railroad, 75 Mo. 583; Zimmerman v. Railroad, 71 Mo. 477.]

"When this principle is applied to the facts of this case it becomes apparent that the defendant's contention in this regard is baseless. It was shown by the uncontroverted evidence that the defendant so arranged the cars in its backing train as to wholly exclude from the vision of the engineer of said train the track over which he was backing said train, and thereby rendered it impossible for him to observe the perilous situation of the plaintiff's cattle until an instant before they were struck. The defendant, by the arrangement of its cars in said train, by its failure to have one or more brake-men on backing train through whom the conductor could have signaled the engineer and thus warned him of the impending danger, by the unlawful speed which it ran said train through the city and over said crossing where plaintiff's steer was killed, created the conditions which made it impossible for defendant's servants in charge of said colliding train to stop it in time to avoid the collision.

"Under a state of facts like these the principle of the defendant's refused instruction was inapplicable."

We think there is no merit in defendant's contentions in this case. It was competent to show that those in charge of the train were unable to avert the collision after they saw deceased in a position of peril on account of their prior negligence, that is, in the brakemen stationing themselves on the tank car in such a position that their signals could not have been seen by the engineer, and the engineer backing his train over the crossing when he could not see a signal if one were given. This was a much used public crossing and those in charge of the train had no right to back it over the crossing blindly without some one being in a position to signal the engineer in case an emergency arose. Defendant's servants knew, or should have known, of the physical condition of the railroad at the place, the curve of the track, the pres-

ence of the telegraph pole and the relative size and position of the cars they were handling. For defendant's servants to negligently put themselves in a situation where their signals would not have been seen by the engineer in time to have stopped and avoided the collision after deceased's peril could have been discovered with ordinary care, is the same in law as if they had discovered his peril in time and negligently failed to act. [Goben v. Railroad, supra, l. c. 11.]

It was the duty of the defendant to station its servants in such places that the signals, either directly or by being relayed to another servant, could always have been seen by the engineer. It was proper to show where such servant could have been stationed in the practical operation of the railroad train under the circumstances, so that the signal could have effectively given. In the case of Griffin v. Transfer Co., supra, cited by defendant, the presence of the engineer six or seven feet from his post was expressly held not to have been negligent under the facts in that case. The prior conduct of defendant's servants in the case at bar was plainly negligent as we have already pointed out. Defendant insists that such prior negligence should have been expressly pleaded as a basis of recovery so that defendant could have shown deceased's contributory negligence to defeat the case. From what we have said there is no merit in this contention. Of course, there was ample pleading of facts giving rise to the humanitarian doctrine. The part of the petition that we first quoted of itself is sufficient to authorize the submission of the case to the jury upon that doctrine. [Hanlon v. Mo. Pac. Rd. Co., 104 Mo. 381; Dickson v. Railway, 104 Mo. 491, 502.]

There was no error in the admission of testimony and in the refusal of defendant's instruction.

The judgment is affirmed. All concur.