GENEVIEVE BUCKS, Appellant, v. DENNIS R. HAMILL, Respondent.— No. 40842.—216 S. W. (2d) 423.

Division One, December 13, 1948.

Rehearing Denied, January 7, 1949.

*Long & McIlroy, A. W. Schimmel* and *F. D. Wilkins* for appellant; *Charles E. Rendlen* and *Albert L. Rendlen* of counsel.

618

*May & May* and *James D. Clemens* for respondent.

[423] BRADLEY, C.—Action to recover $25,000 for personal injury; verdict and judgment for defendant; plaintiff appealed.

Appellant and five other young people, on February 7, 1946, about 12:30 a. m., were driving west on highway 54 from Louisiana, Missouri, to Bowling Green. Donald Lee Swarnes owned the car and was driving. About 4½ miles west of Louisiana he had a blowout in left rear tire according to appellant's case. Donald pulled the car to the right shoulder and all got out. They flagged two eastbound cars for help. The first one was loaded and could not take anyone back to Louisiana for help. In a few minutes thereafter the second eastbound car was flagged down. A soldier and a girl (neither identified) were in this car and it is referred to as the soldier's car. Three of the young people, not including appellant, went over to the soldier's car and were talking to him and the girl. The other three remained about Donald Lee's car. Respondent, his wife and sister, respondent driving, approached from the east in his car; and in passing Donald Lee's car, respondent struck appellant and Donald Lee, and appel-

lant, sustained serious and permanent injury. Respondent was on the way from his farm home near Chesterton, Indiana, to Humansville, Missouri, to see his father, who had been injured, and at the time of the accident respondent was driving 50 to 55 miles per hour, or was so driving when he applied his brakes just a moment before the accident.

[424] According to appellant's case Donald Lee's car was entirely off the pavement; the left rear tire down; tail and headlights on; the soldier's car was off the pavement on the south side and was some 35 or 40 feet east of Donald Lee's car; that appellant was, when struck, standing on the north dirt shoulder a short distance back east of the left rear tire and was facing west. Respondent's evidence tended to show that 14 to 18 inches of the left rear of Donald Lee's car extended over the pavement; that it was Donald Lee's right rear tire that was down; that no tail light was burning; that the soldier's car was only a few feet east of Donald Lee's car and was not off the pavement; that the lights on the soldier's car blinded respondent and that appellant and others were sitting on the pavement; that he first saw these young people when he passed beyond the glare of the lights on the soldier's car. There was skid marks on the pavement tending to show that respondent applied his brakes about 28 feet east of the rear of Donald Lee's car, and the south skid mark was about 6 inches north of the center line of the pavement.

Appellant went to the jury on primary and humanitarian negligence. In submitting primary negligence the jury was directed to find for appellant if found that she was in the exercise of ordinary care for her own safety and that respondent, under the circumstances, failed to exercise the highest degree of care (1) to operate his car in a careful and prudent manner; (2) or failed to drive at a rate of speed so as not to endanger the life and limb of appellant; (3) or drove his car at a high, excessive, and dangerous rate of speed; (4) or failed to have and keep his car under reasonable control so that it could readily and reasonably be stopped or diverted upon the appearance of danger; (5) or failed to sound or give any signal or warning of his approach; (6) or failed to keep a vigilant lookout both ahead and laterally so as to see one on the shoulder of the highway. The humanitarian rule was submitted on the theory that defendant could have stopped, reduced speed, swerved or sounded a warning. The answer was, in effect, a general denial and a plea of contributory negligence.

Appellant assigns error on respondent's instructions A, D, and E; on alleged over emphasis of burden of proof; and on argument of counsel.

The complaint against instruction A is that it "erroneously told the jury the plaintiff must by *her* evidence prove that the de-

fendant was guilty of negligence and that the evidence to sustain plaintiff's case must *outweigh* that for the defendant." The complaint is on the words her and outweigh. It is argued that these words as used deprived plaintiff of the benefit of any favorable evidence from defendant's side of the case, and confused and misled the jury. Instruction A told the jury that "the fact that plaintiff was injured is, in itself, no evidence of negligence on the part of the defendant, but on the contrary, the plaintiff must by her evidence prove that defendant was guilty of negligence, and in this connection the jury is instructed that the burden of proof is upon the plaintiff to prove the defendant's negligence, if any, as alleged in the plaintiff's petition by a preponderance of the evidence." The instruction goes on to define burden of proof and preponderance of the evidence as not meaning the number of witnesses, "but means that, in the point of value and credibility, the evidence to sustain plaintiff's case must outweigh that for the defendant."

Had there been evidence from the respondent's side of the case favorable to appellant, it would have been improper to use the words *her* and *outweigh* as here used. Chaar et al. v. McLoon, 304 Mo. 238, 263 S. W. 174, l. c. 177; Barr v. Mo. Pac. R. Co. (Mo. Sup.), 37 S. W. (2d) 927, l. c. 930. It is sufficient to say that appellant does not point out any favorable evidence from respondent's side, and in a careful reading of the entire record we fail to note any such evidence. In such situation we do not think that appellant was prejudiced by instruction A.

■ Respondent's instruction D told the jury that appellant's instruction 3 embraced the humanitarian rule; that instruction 3 covered only such period of time "as existed after you may believe defendant saw or by the exercise of the highest degree of care could have seen that plaintiff was in a position of peril, if she was, and in deciding the issues under said foregoing instruction you cannot find him guilty of any [425] prior negligence or negligent speed claimed to have existed before he saw, or by the exercise of such care could have seen plaintiff in peril, if she was. . . . " Appellant's complaint is, if we understand it, that the instruction tells the jury that antecedent negligence could not be considered under the humanitarian submission. She states in the brief that to say that it is the law that "the humanitarian rule does not apply until after defendant flew (speeded) into and beyond the blinded space" is not the proper concept of the humanitarian rule. Appellant's complaint on instruction D is not well taken. Certainly under the humanitarian rule antecedent negligence, speed, or whatever it may be, can have no consideration. State ex rel. Fleming v. Bland et al., 322 Mo. 565, 15 S. W. (2d) 798, l. c. 801, and cases there cited. Antecedent negligence is primary negligence and it is pointed out in State ex rel.

Fleming, supra, that if primary negligence could be considered under the humanitarian rule there would be unwarranted recoveries because of the exclusion of consideration of contributory negligence. Contributory negligence cannot be considered under the humanitarian rule and antecedent negligence will not make a case under the rule.

■ Respondent's instruction E repeated, in effect, the way appellant submitted in instruction 3 her case under the humanitarian rule, and then the instruction concluded as follows: "In reference to said charge, the court instructs the jury that if you believe and find from the evidence, that defendant could not, by the exercise of the highest degree of care, have prevented his automobile from striking the plaintiff, then in that case plaintiff is not entitled to recover, and your verdict shall be for the defendant." The complaint is that instruction E fails to hypothesize facts which exclude negligence; that the instruction is a mere "abstract recital"; that the instruction "gives the jury no specific application of facts found by the jury and no guide or limitation." There is no place in such an instruction for hypothesizing facts, and it is not suggested what specific application could have been included. If such an instruction can be classified it might pass as a cautionary or argumentative instruction. Cautionary instructions are generally argumentative. Instruction E would have been improved had there been added after the word recover, near the conclusion, the phrase "under the humanitarian rule", or some such phrase. However, that would perhaps be implied, and besides, appellant does not make any complaint in that respect. The giving of cautionary instructions is largely within the discretion of the trial court and unless such discretion is abused it will not be interfered with on appeal. McCollum v. Shubert (Mo. App.), 185 S. W. (2d) 48, l. c. 52, and cases there cited. We do not think that discretion was abused in giving respondent's instruction E.

■ Was error committed in over emphasizing that the burden of proof was on appellant? In the brief appellant says that each of respondent's instructions A, G, and H told the jury "that the burden was on the plaintiff to prove to the satisfaction of the jury by the greater weight of the evidence the facts necessary to entitle her to recover." As appears, supra, respondent's instruction A did tell the jury that the burden of proof was on appellant, but the word *satisfaction* was not used. Instructions G and H were cautionary instructions, but do not mention burden of proof. Instruction G told the jury that their first duty was to determine whether respondent was negligent "as defined to you by other instructions", and that until that question was determined, the jury had no right to consider the nature and extent of appellant's injuries. Instruction H cautioned against guess and speculation. We have examined all of re-

spondent's given instructions, and the subject of burden of proof appears only in instruction A.

On argument: In the assignment on argument plaintiff says that she was prejudiced by the "remarks of defendant's counsel in his opening and his closing argument concerning intoxicating liquor, booze joints, and the insinuation and inferences that plaintiff and her associates were all intoxicated which highly prejudiced the jury against plaintiff." The closing argument of defendant's counsel appears in the record, but there is nothing to show the opening argument. The six young people in Donald Lee's car, including himself, before they left Louisiana for Bowling Green, [426] were in two places—Martin's Cafe and Roberts' Cafe—where both liquor and beer were sold, but there was no evidence that appellant drank either; all drank soft drinks except Wilbert Anderson and Forrest Swarnes who drank a bottle of beer each. They arrived at Martin's around 8 p. m., and there ate sandwiches, drank coffee and soda. Appellant said that there was a picture machine at Martin's and that "a lot of kids run in there", and that her group on this night ran "in there and we talked and had a good time in there." Most of the evening was spent at Martin's, and after they left this cafe they went to Roberts' place and had some soft drinks. It was at Roberts' place that Wilbert and Forrest drank the beer. · Forrest said that they arrived at Roberts' place about 11:45 p. m. The accident occurred 4½ miles west of Louisiana, about 12:30 a. m., so they were not at Roberts' place any great length of time.

In argument, Mr. May, counsel for respondent, said: "Now, ladies and gentlemen, as in all cases, especially cases of this character, there are many strange things that come into it. Many things like the straw in the wind that is blowing, you can see you have some idea which way the wind is blowing from the straw. We have in this case, ladies and gentlemen, this testimony and this evidence showing that these six people, one of whom was a 15 year old girl (not appellant) in this automobile at Clarksville, and went to Louisiana, and they went right to Martin's Cafe; they stayed there until about 11:00 or 11:30 and then, ladies and gentlemen, at that hour of the night, as late as that was, did they go home? Did this young girl 15 years old go back home and these others go back home? No. They left the cafe and went to a booze joint—Mr. Wilkins (counsel for plaintiff): To that we object; I ask the attorney to be reprimanded and the jury instructed to disregard it. Mr. May: I say, your Honor, I am correct in my statement, the testimony has been they sold both liquor and beer. The court: The plaintiff is not bound by anything the others would do and the instructions don't so say. Mr. May: This plaintiff, instead of going home at that hour, went to the booze joint—Mr. Wilkins: We object and except; we object to any insinuation in this

case that this plaintiff was drinking any intoxicating liquor or had any intoxicating liquor; it is objected to; it is highly prejudicial and is contrary to the testimony and it is not even charged in their answer. Mr. May: I never said she was drinking. Mr. Wilkins: The insinuation is such. The court: Sustained; leave it out."

Among the cases cited in support of the assignment on argument of counsel is Leaman v. Campbell 66 Express Truck Lines, 355 Mo. 939, 199 S. W. (2d) 359. The argument complained of in the present case is not comparable to the argument in the Campbell case, besides, in that case the court did not definitely rule that the argument was improper; merely advised the jury that attorneys make arguments and draw inferences, but the jury would base their verdict solely on the evidence. In the present case the court sustained the objection to the argument complained of and directed counsel to "leave it out." We have examined the other cases cited by appellant, but find no support for the assignment on argument. It is quite evident, we think, that the jury did not believe that appellant was exercising any care for her own safety and that respondent was not at fault for not seeing the situation until it was too late. The record reflects that appellant is a fine young woman; that her company that night was fine young people. It is not conceivable that a jury of her county would have been prejudiced against her and in favor of a stranger from another state because of the argument complained of.

The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.